UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 05-470-KSF

THE CINCINNATI INSURANCE CO.                                                                                   PLAINTIFF

V.                                        **OPINION & ORDER**

CROSSMANN COMMUNITIES PARTNERSHIP
n/k/a BEAZER HOMES INVESTMENT CORP., *et al.*                                       DEFENDANTS

V.

ILLINOIS UNION INSURANCE COMPANY                                   THIRD-PARTY DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the motion of third-party defendant Illinois Union Insurance Company ("Illinois Union") for judgment on the pleadings [DE #53].

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Between 1998 and 2002, Cutter Homes Ltd., a subsidiary of defendant Crossmann Communities Inc. ("Crossmann")[1] acted as general contractor for the construction of approximately 148 houses in the Beaumont subdivision in Lexington, Kentucky. Subcontractors performed all or most of the actual construction of the Beaumont houses, but Crossmann was the general contractor on all of the projects.

---

[1] Crossmann merged into Beazer Homes Investment Corporation in April of 2002. Beazer Homes Investment Corporation later changed its name to Beazer Homes Investments LLC ("Beazer"), the named defendant in this action. Therefore, Beazer is successor-in-interest to Crossmann.

After Crossmann's merger into what ultimately became Beazer Homes Investments LLC ("Beazer"), Beaumont homeowners complained of property damage and related medical issues resulting from water intrusion into their houses, which they claim was a result of faulty workmanship by Crossmann and/or its subcontractors.[2] Beazer notified its insurer, plaintiff The Cincinnati Insurance Company ("CIC"), who investigated the claims, established a remediation protocol, and began repairing the alleged construction defects. Beazer then submitted claims to CIC for houses with closing dates between December 1998 and July1, 2002, that have incurred damage as a result of water intrusion. During the relevant time period, Crossmann and/or Beazer were also covered by an Illinois Union commercial general liability policy (hereinafter the "CGL Policy") and an excess liability policy (the "Excess Policy") for the time period including December 31, 2001, through May 1, 2002.

CIC accepted notice of the cases conditionally under a full reservation of rights. It then filed this action on November 26, 2005, seeking declaratory judgment regarding coverage under the policies at issue and also bringing a breach of contract claim for the alleged failure of Crossmann and/or Beazer to maintain underlying insurance. No Beaumont homeowner has filed suit in connection with the defective construction. Beazer counterclaimed against CIC and filed a third-party complaint against Illinois Union for breach of contract and declaratory judgment regarding coverage.

---

[2] According to the reservation of rights letters, some houses developed leaks around the bricked windows, others leaked in various places due to defective installation of the brick veneer, some houses lacked an exterior vapor barrier, or joints were left unsealed. Damage included water-impacted material, other water staining or damage to the houses, and evidence of fungal growth, microbial growth, and/or mold, which caused medical problems in some of the inhabitants.

## II.     THE PARTIES' ARGUMENTS

In the present motion, Illinois Union asks the Court to enter judgment in its favor finding that its policies do not afford coverage for the water intrusion and other problems resulting from defective construction of houses in the Beaumont subdivision.  It argues that any sums Beazer has paid are not damages that Beazer was "legally obligated to pay as damages" as required by the policies.  Because judgment was never entered against Beazer through a lawsuit filed by an underlying claimant, Illinois Union argues that under Kentucky law indemnity coverage under the CGL Policy was never triggered.

Beazer responds that Illinois Union has relied on statements taken out of context from inapplicable cases to fashion its argument.  This is not only not the law, but is also inconsistent with the policy language – the CGL Policy at issue provides coverage not only for "suits" but also for "claims" against Beazer.  Several homeowners have made written demands alleging property and/or bodily injury; several are represented by attorneys; one has filed a complaint with the office of the Attorney General of Kentucky; and one has filed a pleading in Beazer's action against certain subcontractors now pending in Fayette County, Kentucky, Circuit Court.  Beazer further argues that Indiana law applies rather than Kentucky law, and that Indiana courts have rejected the limitation that Illinois Union suggests.  Even under Kentucky law, however, Beazer was not required to wait until homeowners sued to obtain general liability coverage.

In reply, Illinois Union argues that the Court need not apply Indiana law because there is no conflict between Indiana and Kentucky law on the question presented – therefore, it is a "false conflict" and the Court should apply the law of the forum state.  Regardless, neither state requires Illinois Union to indemnify Beazer in the situation presented.  Beazer's remediation efforts did

not result from any filed lawsuit, judgment, settlement, or directive of comparable legal effect, per Illinois Union.

### III.  DISCUSSION

Before reaching the merits of Illinois Union's motion, the Court would point out that the language in the CGL Policy defining "occurrence" and "property damage" is practically identical to those same definitions in the policies issued by The Cincinnati Insurance Company ("CIC") and which were the subject of CIC's motion for judgment on the pleadings.  As to CIC's motion, the Court ruled that there was no occurrence and no property damage under the present circumstances and, therefore, no coverage under the CIC policies.  Despite the similar language and the ruling on the CIC policies, Illinois Union has not ruled for judgment on those grounds.

####   A.    Choice of Law

Because this case arises under diversity jurisdiction, the Court applies Kentucky choice-of-law principles.  Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941) (holding that a federal court sitting in diversity applies the forum state's choice of law); Himmel v. Ford Motor Co., 342 F.3d 593, 598 (6th Cir. 2003).  Kentucky applies different choice of law rules depending on whether the claim involves a tort or a contract.  In contract cases, Kentucky law requires the Court to determine "which state has the most significant relationship to the transaction and the parties."  Lewis v. American Family Ins. Group, 555 S.W.2d 579, 581-82 (Ky. 1977) (citing Restatement (Second) of Conflict of Laws § 188 (1971)); Poore v. Nationwide Mut. Ins. Co., 208 S.W.3d 269, 271 (Ky. Ct. App. 2006).  This is typically the state of the named insured, regardless of where the injury occurs.  Lewis, 555 S.W.2d at 581.

While the claimants in this case are located in Kentucky, the Court in this case is asked to construe an insurance policy issued to Crossmann/ Beazer by Illinois Union. As between these two parties, Crossmann (as the named insured) was an Indiana resident and had its principal place of business in Indiana at the time the parties entered into the policies. The policies were brokered, placed, paid for, and delivered in Indiana. It appearing that Indiana has the most significant relationship to the policy transaction, the Court will apply Indiana law.[3]

### B. "Legally Obligated to Pay as Damages"

The insuring clause in the CGL Policy[4] states in relevant part as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

Illinois Union argues that because no homeowner has ever filed suit on any claim, much less reduced any claim to judgment, Beazer never became "legally obligated to pay as damages" any

---

[3] To the extent that there is no actual conflict between Kentucky and Indiana law, a "false conflict" is presented, an issue not addressed by Kentucky state law. In most cases, the law of the forum jurisdiction will govern in that situation. "However, if only one jurisdiction has a legitimate interest in the application of its rule of decision, in this 'false conflict' situation the law of the interested jurisdiction is applied." 15A C.J.S. Conflict of Laws § 28 (2008). Given that Kentucky has little interest in the application of its rule of law in the present situation, and Indiana is the only interested jurisdiction, the Court finds that it is appropriate in this situation to apply Indiana law. While the Lewis court did not expressly find that there was a false conflict, the Kentucky Supreme Court's application of Indiana law under similar circumstances suggests that this is the appropriate course.

[4] The Excess Policy "follows form to" or provides coverage in the same manner as the CGL Policy. Therefore, it is appropriate to focus on the language of the CGL Policy to answer coverage questions.

sum for bodily injury or property damage. Therefore, a coverage duty on the part of Illinois Union never arose.

The cases cited by Illinois Union do not stand precisely for the proposition it advances here. For example, the Kentucky cases cited hold generally that *a victim/claimant* – not an insured as in the present case – may not maintain an action against a tortfeasor's insurer unless and until the claimant has reduced the injury to judgment. Our case, on the other hand, asks a different question – does the CGL Policy require a suit and/or judgment against the insured to be filed in order to trigger Illinois Union's duty of coverage?

There is language in the case of Kentucky Hosp. Ass'n Trust v. Chicago Ins. Co., 978 S.W.2d 754 (Ky. Ct. App. 1998), however, to support Illinois Union's argument. In that case, once an underlying suit by the victim was resolved (a medical malpractice suit which did not name the pharmacist involved), the pharmacist's professional liability insurer sought subrogation from the pharmacist's general liability insurer. The Kentucky court held that there was no coverage because no legal obligation ever arose on the part of the pharmacist because he was never named in the underlying suit. Id. at 755-56. This suggests that the "legally obligated to pay as damages" language requires at least the filing of a lawsuit and perhaps even a finding of liability via a judgment.

The Court can find no Indiana law directly addressing the question presented. The Indiana cases that Beazer relies on are distinguishable, as all of those involve interpretation of policy language *after* a suit or consent judgment had been filed. For example, in Midwestern Indemnity Co. v. Laikin, 119 F. Supp.2d 831 (S.D. Ind. 2000), the insured owned a trailer park for which the insurer provided a policy. After a deadly mobile home fire, the family involved

settled their dispute with the insured through a $1.6 million consent judgment in state court. Under the consent judgment, the insured paid the family $300,000 and the family agreed to collect the difference only from the insurer, not from the insured, via a "covenant not to execute." The insurer argued that under the consent judgment, the family was not "legally obligated to pay as damages" anything over the $300,000 already paid and, therefore, no duty of coverage arose under the policy.

The district court rejected this reasoning, apparently based solely on the fact that the insured had refused to provide a defense for the insured in the underlying suit. The court concluded "that an insurer may not hide behind the 'legally obligated to pay' language of the policy after it abandons its insured and the insured settles the claim against him by agreement." Id. at 852 (quoting American Family Mutual Ins. Co. v. Kivela, 408 N.E.2d 805, 812 (Ind. Ct. App. 1980)) (quotations omitted). Other Indiana cases have noted this general principle. Cincinnati Ins. Co. v. Young, 852 N.E.2d 8, 16 (Ind. Ct. App. 2006) (discussing generally, but analyzing a different issue).

The lesson to be gleaned from these cases is that if an insured is left to defend itself *in underlying litigation*, without knowing whether it will have insurance coverage, Indiana courts will focus on the insurer's refusal to defend and will prohibit an insurer from relying on the "legally obligated to pay" language to avoid satisfying a consent judgment. This is not the case presented here, and so these cases are of little value in the analysis.

There is one Indiana case that touches on the subject. In Travelers Indem. Co. v. Summit Corp. of Am., 715 N.E.2d 926 (Ind. Ct. App. 1999), the insured sought coverage from its CGL insurer for cleanup and response costs associated with environmental liability claims made by

state or federal regulatory agencies in administrative proceedings. No lawsuit was ever involved. The insurers argued that the environmental administrative actions were not a "suit" and, therefore, there was no coverage.

Citing policy language almost identical to that in the CGL Policy, the Indiana Court of Appeals noted the following:

> Because the liability to pay on behalf of the insured depends upon the insured being legally obligated to pay and not on the manner in which the insured became legally obligated to pay, the provisions for the company to have the "right and duty to defend any suit seeking those damages" would indicate to the ordinary person that the company must defend against any proceeding or process that could result in the insured being "legally obligated to pay." Consequently, we conclude that the term "suit" here is broad enough to encompass the claims against [the insured] by the various environmental agencies. Therefore, the trial court did not err in its determination that "suit" includes environmental administrative actions.

Id. at 934 (citation omitted). Based on this language, the Court is of the opinion that Indiana courts would hold that the duty to defend, at least, which admittedly is broader than the duty to indemnify, is triggered anytime there is a "process that could result in the insured being 'legally obligated to pay.' " See also Hartford Acc. & Indem. Co. v. Dana Corp., 690 N.E.2d 285 (Ind. Ct. App. 1997) (agreeing with courts that have held coercive and adversarial administrative proceedings to be "suits"). Regardless, Illinois Union's duty to defend is not an issue in this case.

Beazer argues that the CGL Policy's use of the words "suit" and "claim" make it clear that coverage is available for damages incurred in response to a claim, regardless of whether a suit is filed. However, the Court does not read the CGL Policy in this manner. The insuring clause is clear that Illinois Union's only duties are (1) to pay for sums that Beazer is "legally

obligated to pay as damages" and (2) to defend Beazer in any "suit" filed. The only mention of a "claim" or "occurrence" is in the sentence indicating that Illinois Union *may, in its discretion*, investigate a claim or occurrence and settle any suit that results. Based on this distinction, it does not appear that a coverage duty arises when only a claim or occurrence is involved.

Beazer also contends that, in the least, the CGL Policy is ambiguous because neither "legally obligated" nor "damages" are defined terms. However, to the extent that Beazer had any potential or real legal obligation to pay damages to the homeowners, it was as a result of its contract with the Beaumont homeowners.[5] In this situation, the CGL Policy expressly excludes coverage for such damages where it states that "[t]his insurance does not apply to . . . "[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. . . ." Thus, even under a best-case scenario for Beazer – that Indiana law would include the "claims" in this case under the definition of "suit" and would not require a lawsuit to be filed – the contract exclusion results in no coverage in this case, at least for the contractual claims of the homeowners. Based on the above, the Court finds there is no coverage for costs associated with the claims for property damage to the houses.

With respect to the bodily injury claims or claims for damage to property other than the houses at issue, the contractual liability exclusion does not apply. However, the Court is reluctant to say that a written demand alone, without the coercive force of a lawsuit, can be

---

[5] Beazer asserts generally that a legal obligation may arise from a contractual, statutory, or other duty, but does not state what legal obligation it has *in this case*. Two cases cited by the parties, Aetna Cas. & Sur. Co. v. Commonwealth of Ky., 179 S.W.2d 830, 838 (Ky. 2005), and Travelers Indem. Co. v. Summit Corp. of Am., 715 N.E.2d 926 (Ind. Ct. App. 1999), hold that environmental administrative proceedings are "suits" even if no lawsuit is filed, which triggers the duty to defend. However, that is not the case here.

considered a "process that could result in the insured being 'legally obligated to pay' " under Indiana law. Unlike a court action or administrative proceeding, there was no "process" in the facts presented, simply negotiations. Therefore, the Court is of the opinion there is no coverage for these claims either, as Beazer never had any legal obligation to pay them.[6]

Finally, even if the Court found that Beazer was "legally obligated to pay" the damages associated with the homeowners' claims, there would likely not be coverage given its ruling on the CIC policy definitions of "occurrence" and "property damage," which were essentially identical to the definitions in the CGL Policy at issue herein. However, as noted above, Illinois Union has not moved for entry of judgment on this basis.

## IV. CONCLUSION

Based on the above, the Court finds that Beazer was not "legally obligated to pay" damages related to the claims of the Beaumont homeowners and, therefore, no coverage duty arose under the Illinois Union policies. Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1) pursuant to applicable Indiana law, Beazer was never "legally obligated to pay" the claims submitted to Illinois Union by Beazer for coverage under the CGL and Excess Policies for water intrusion and other problems resulting from defective construction and, therefore, no coverage duty arose;

(2) Illinois Union's motion for judgment on the pleadings [DE #53] is GRANTED;

---

[6] The CGL Policy also includes a "Mold, spores and/or Fungus Sub-Limit Endorsement" and a Mold, Spores and/or Fungus Liability Exclusion." However, the parties do not mention these provisions, how they impact the potential coverage questions raised, or how they should be interpreted in light of one another. With no guidance from the parties, the Court has not undertaken that analysis.

(3)     this order is interlocutory in all respects.

This March 28, 2008.



Signed By:

*Karl S. Forester* KSF

**United States Senior Judge**

-11-