UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:05-cv-470-KSF

THE CINCINNATI INSURANCE COMPANY                                        PLAINTIFF

vs.                              **OPINION AND ORDER**

CROSSMANN COMMUNITIES PARTNERSHIP, et al.                    DEFENDANTS

\* \* \* \* \* \* \* \* \*

This matter is before the Court on the motion of Defendants Beazer Homes Investments, LLC, f/k/a/ Crossmann Communities Partnership, and Beazer Homes Indiana LLP (collectively "Beazer") pursuant to Fed. R. Civ. P. 60(b) for relief from the final judgment entered June 26, 2008, in favor of Plaintiff. Beazer's appeal from the final judgment is currently pending in the Sixth Circuit, and its motion is made pursuant to the procedure prescribed in *First National Bank of Salem, Ohio v. Hirsch*, 535 F.2d 343 (6th Cir. 1976). Because this Court does not have jurisdiction while the appeal is pending, it can only provisionally indicate whether it would grant the motion. *See Post v. Bradshaw*, 422 F.3d 419, 421 (6th Cir. 2005). For the reasons discussed below, this Court would not grant the motion, and the appeal should proceed.

I.      BACKGROUND

The underlying action in the present case is Cincinnati's request for a declaratory judgment that its 1998 and 2001 Commercial Umbrella Liability Policies issued to Beazer do not provide insurance coverage for water intrusion and other problems resulting from defective construction of houses in the Beaumont Subdivision, Lexington, Kentucky. On March 20, 2008, this Court granted judgment on the pleadings in favor of Cincinnati based upon applicable Indiana law. *The Cincinnati Ins. Co. v. Crossmann Communities Partnership*, 621 F. Supp.2d 453 (E.D. Ky. 2008).

The judgment was based on several grounds. First, these Commercial General Liability ("CGL") policies issued to Beazer as a general contractor do not provide coverage for the business risk of damage to homes defectively constructed by Beazer's subcontractors. This type of damage is not "property damage" under the policies. *Id.* at 459-64. Second, there was no "occurrence," which is defined in the policies as "[a]n accident ... that results in 'bodily injury' or 'property damage.'" *Id.* at 464-65. Finally, even if there were an "occurrence," this Court held that for bodily injury suffered by homeowners due to fungus or mold, coverage was precluded by a fungus exclusion in both the 1998 and 2001 policies. *Id.* at 465-66.

Beazer seeks relief from the Judgment herein based on information he claims was subsequently discovered in a similar declaratory judgment action relating to Beazer homes defectively built in Indiana. With respect to property damage under the policies, he argues that Cincinnati's corporate representative, in his deposition, "candidly conceded that damage to a home constructed by Beazer resulting from the negligence of a Beazer subcontractor constitutes 'property damage' caused by an 'occurrence,' which is covered under the plain language of the Cincinnati Policies." [DE 114, p. 6]. Accordingly, Beazer claims entitlement to relief from this Court's conclusion that there was neither property damage nor an occurrence.

Beazer further relies on an admission by Cincinnati that there was no fungus exclusion in the 1998 policy. Accordingly, he claims entitlement to relief from the conclusion that there was no coverage for bodily injury under the fungus exclusion.

In support of his argument for relief under Rule 60(b)(2), Beazer argues that the foregoing evidence is "newly discovered" evidence which Beazer pursued with due diligence and which is "material and controlling and clearly would have produced a different result if presented before the original judgment." [DE 114, pp. 11-14]. Under Rule 60(b)(3), Beazer argues vigorously it has shown by clear and convincing evidence that Cincinnati engaged in misconduct because Cincinnati knew its arguments made to this Court regarding property damage, occurrence and the fungus

exclusion were wrong, but it refused to admit the same until after judgment in its favor was rendered.

Cincinnati responds that extrinsic evidence is not relevant to a motion for judgment on the pleadings unless the motion is converted to one for summary judgment, which was not done in the present case. It argues that Beazer had failed to meet its burden regarding evidence of misconduct and, further, that there was no prejudicial effect on the outcome of the litigation. It notes that the discussion of the fungus exclusion was dicta since the Court had already decided there was no occurrence. It explains that the testimony of its corporate representative was not an admission of legal issues and that its legal position was supported by Indiana case law. Cincinnati further argues that Beazer is not entitled to relief based on "newly discovered evidence" because Beazer was not diligent in that it never sought the deposition of a corporate representative in this case, nor did it request an opportunity to conduct discovery before a ruling on the motion for judgment on the pleadings. Moreover, the evidence was not material and controlling and would not have produced a different result. [DE 115].

Beazer's reply attempts to respond to Cincinnati's arguments, but primarily reiterates its own contentions. [DE 116].

**II.    ANALYSIS**

"[U]nder Rule 60(b)(2), the moving party must show that the newly discovered evidence, if introduced at trial, 'clearly would have produced a different result if presented before the original judgment.'" *Venture Industries Corp. v. Autoliv ASP, Inc.*, 457 F.3d 1322, 1333 (Fed. Cir. 2006), quoting *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998). Under Rule 60(b)(3), "prejudice should be presumed [ ] once the moving party has shown by clear and convincing evidence that misbehavior falling into one or more of the three categories set out in Rule 60(b)(3) has occurred." *Venture*, 457 F.3d at 1333, quoting *Jordan v. Paccar, Inc.*, 1996 WL 528950 at *8 (6th Cir. 1996). The non-moving party then has the burden "to demonstrate by clear and

convincing evidence that the misbehavior which occurred had no prejudicial effect on the outcome of the litigation." *Id.*

The parties do not dispute that Indiana law applies to interpretation of the subject insurance policies. Several recent cases illustrate the long-standing rule in Indiana that CGL policies like these do not provide coverage for the contractual obligations of a building contractor.

In *T. R. Bulger, Inc. v. Indiana Ins. Co.*, 901 N.E.2d 1110 (Ind. Ct. App. 2009), the court said:

> Bulger's work as a contractor gives rise to two different types of risk: 1) a business risk, and 2) a risk of occurrences that give rise to insurable liability. See *Jim Barna Log Sys. Midwest Inc. v. Gen. Cas. Ins. Co. of Wis.*, 791 N.e.2D 816, 823 (Ind. Ct. App. 2003).
>
>> [A] contractor holds himself out as being capable of completing the bargained-for construction in a workmanlike manner. At the same time, the property owner relies upon that representation and anticipates suitable goods and services. When the contractor's work is faulty, either express of implied warranties are breached, and a dissatisfied customer may recover the cost of repair or replacement of the faulty work from the contractor as the standard measure of damages for breach of warranty.
>
> *Id.* at 823-24. This business risk is born by the contractor and is not insured by CGL policy. "To hold otherwise would effectively convert the policy into a performance bond or guarantee of contractual performance and result in coverage for the repair and replacement of the insured's own faulty workmanship." *Ind. Insur. Co. v. DeZutti*, 408 N.E.2d 1275, 1279 (Ind. 1980).
>
> On the other hand, the same neglectful craftsmanship, once it is completed, may result in bodily injury or damage to property other than the completed work itself for which the insured may be found liable. *See id.* Commonly, a CGL policy provides coverage for this tort liability for physical damages to others. In the case of a subcontractor on a construction project, any damage to the larger work caused by his product or work would be damage to other property which would be covered by a CGL policy. *Id.* at 1280.
>
> Our supreme court has summed up the distinction between the two risks by stating that a CGL policy "does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident." *Id.* at 1279.
>
> * * *
>
> The risk intended to be insured by the policy here is "the possibility that the goods, products, or work of the insured, once relinquished or completed, will cause bodily

4

> injury or damage to property other than to the product or completed work itself, and for which the insured by be found liable." *DeZutti*, 408 N.E.2d at 1279 (quoting Roger C. Henderson, "Insurance Protection for Products Liability and Completed Operations – What Every Lawyer Should Know." 50 Neb. L. Rev. 415, 441 (1971)).

*Id.* at 1115. Bulger was a subcontractor whose "work" involved installation of a HVAC system. When sued for his faulty workmanship, he tried to recover from his own CGL policy. His claim was denied to the extent of damages for repair or replacement of the HVAC system or economic damages related to breach of contract and warranty claims. *Id.*

Beazer twists the holding of *Bulger* to argue that he should have coverage for faulty subcontractor work that damaged other non-defective parts of the houses he built. The distinction he ignores is that he is a general contractor seeking coverage from his own general contractor CGL policy in which his "work" is the entire house.

*Westfield Ins. Co. v. Sheehan Const. Co., Inc.*, 580 F. Supp.2d 701 (S.D. Ind. 2008) involved facts similar to the present case. Sheehan was the general contractor for a number of homes, but left all of the work on the homes to various subcontractors. The faulty work of subcontractors caused water intrusion and corresponding damage to the homes. *Id.* at 705. Sheehan argued, as Beazer does here, that "the faulty workmanship caused damage to components of the house that were not otherwise faulty." *Id.* at 711.

> The court simply cannot accept Sheehan's argument that the damage to the otherwise non-defective parts of the houses damaged by faulty workmanship constitutes "property damage." First, the conclusion is not consistent with Indiana law. In *R. N. Thompson [& Associates, Inc. v. Monroe Guaranty Ins. Co*, 686 N.E.2d 160 (Ind. Ct. App. 1997)], the Court of Appeals found that the damage to the roofs in the affected houses was "economic loss," not "property damage." 686 N.E.2d at 164.

*Id.* Under "Indiana law, a general contractor's product is the entire project or house which he built and sold, including all component work done by subcontractors. *DeZutti, supra,* 408 N.E.2d at 1280. Therefore, in this case, any repair costs by Sheehan due to the faulty workmanship of its subcontractors is not 'property damage.'" *Westfield*, 580 F. Supp. 2d at 712.

5

The *Westfield* court also held the water damage brought about by faulty work was not an "occurrence" under the policy. "The *Amerisure* Court recognized that a majority of courts have determined that faulty workmanship is not an accident, and therefore, not an occurrence.'" *Id.* at 713, quoting *Amerisure, Inc. v. Wurster Construction Co.*, 818 N.E.2d 998, 1004 (Ind. Ct. App. 2004). "Here, neither the faulty workmanship nor the damage done to the Class Members' homes is an accident. Based on the nature of the faulty workmanship, including improperly sealed window joints and roofs and lack of house wrap, the fact that water penetrated the homes is certainly the natural and ordinary consequence of the defects." *Westfield*, 580 F. Supp.2d at 713-714.

> The Indiana law of "occurrence" is clear and well-established, and Sheehan has provided the court with no indication that the Indiana Supreme Court would depart from the holding in *R.N. Thompson* and its progeny.

*Id.* at 714.

Similar water damage caused by the faulty work of subcontractors was involved in *Sheehan Const. Co., Inc. v. Continental Casualty Co.*, 908 N.E.2d 305 (Ind. Ct. App. 2009). After Sheehan, the general contractor, was sued by a class of homeowners, he sought to recover from his CGL policies. The appellate court affirmed summary judgment in favor of the insurance carrier on the ground that the "policies do not provide coverage for the Class/Sheehan's claims as there was no 'occurrence' and no 'property damage.'" *Id.* at 307-308. The court noted that "the use of this terminology in a CGL policy is not a novel incident; rather, this is standard language for CGL policies in this country." *Id.* at 308, quoting *Amerisure* at 1003. "Under our reasoning in *R.N. Thompson*, the damage to the Class members' homes cannot be treated as distinct from the underlying faulty workmanship that allowed the water penetration. The policies do not cover the damage to the class members' homes, and summary judgment for the insurers was proper." *Id.* at 309.

Finally, *Trinity Homes LLC v. Ohio Casualty Ins. Co.*, 2009 WL 3163108 (S.D. Inc. 2009) involved the same Cincinnati policies, along with other policies, and many of the same parties and

issues as the present case. Beazer was the general contractor for numerous homes built in Indiana, and the homeowners claimed "that the faulty work of Plaintiffs' subcontractors resulted in water intrusion, which in turn damaged various components of the purchasers' homes." *Id.* at *1. The court first noted that "[u]nder Indiana law, the interpretation of an insurance policy is a question of law for the Court." *Id.* at *5. *See also Westfield*, 580 F. Supp.2d at 709 (same); *Bulger*, 901 N.E.2d at 1114 ("The construction of an insurance policy is a question of law for which summary judgment is particularly appropriate."). The court considered Beazer's contentions that the corporate representatives admitted the underlying claims constituted "property damage." It soundly rejected Beazer's argument, saying "the statements of a company representative do not trump clear contract language and well established Indiana law defining the term 'property damage.' *See Cinergy Corp. v. Associated Elec. & Gas Ins. Services, Ltd.*, 865 N.E.2d 571 (Ind. 2007) (rejecting the use of 'extrinsic facts' to created a legal issue as to the interpretation of a contract)." *Id.* at *7, n. 9; *see also id.* at *9, n. 16. The court further found that the statements of the corporate representative were "ambiguous and equivocal." *Id.* at *7, n. 9.

*Trinity* held that "[u]nder Indiana law, claims limited to remedying faulty workmanship or materials do not involve 'property damage' as that term is used in CGL policies." *Id.* at 6, citing *R.N. Thompson*, 686 N.E.2d at 163. "Therefore, the insured seeking coverage must demonstrate that some property other than the project itself – that is to say, something other than the homes constructed by Plaintiffs and their subcontractors – was damaged." *Id.* at *6. Although the damage to the homes was "caused by water penetration and not faulty workmanship directly," the court held the water penetration "is not to be treated as distinct from the underlying faulty workmanship which allowed the water penetration." *Id.* at *7, quoting *Westfield*, 580 F. Supp.2d at 711.

The court next considered whether there was an "occurrence" under the policies. The court noted that "the natural and ordinary consequences of an act do not constitute an accident." *Id.*, quoting *Westfield*, 580 F. Supp.2d at 714. "Applying Indiana law, we thus conclude that the water

7

damage to components of the homes in this case was nothing more nor less than the natural and ordinary consequence of faulty workmanship, and was thus not an 'accident.' It follows that none of this underlying damage was caused by an 'occurrence.'" *Id.* at *8. The court did not need to consider any exclusions since there was no coverage extended by the insuring clause. *Id.*

As these cases illustrate, Indiana courts have not found any ambiguity in the terms "property damage" or "occurrence" in CGL insurance contracts. In the present case, no one has argued that these terms are defined in a non-standard way in these policies. Accordingly, there is no ambiguity for which extrinsic evidence would be admissible. "One standard rule of contract interpretation is that if the language of an instrument is unambiguous, the intent of the parties is to be determined by reviewing the language contained between the four corners of that instrument." *Estate of Spry v. Greg & Ken, Inc.*, 749 N.E. 2d 1269, 1273 (Ind. Ct. App. 2001). *See also, Wright v. State*, 700 N.E.2d 1153, 1155 (Ind. Ct. App. 1998) ("[W]hen the terms of a contract are clear and unambiguous, they are conclusive of [the intent of the parties] and the court will not construe the contract or look to extrinsic evidence."). Thus, in the present case, any statements of the corporate representative regarding the meaning of the contract terms "property damage" or "occurrence" is irrelevant and inadmissible.

Under either Rule 60(b)(2) or 60(b)(3), Beazer's contention that a Cincinnati corporate representative admitted the claims constituted property damage or an occurrence could not change the outcome of the Court's March 20, 2008 judgment. The Court's Opinion was based on Indiana law regarding the plain meaning of the policy terms. *Crossmann*, 621 F. Supp. 2d at 459-465. Indiana law has not changed. As the *Trinity Homes* court said: "the statements of a company representative do not trump clear contract language and well established Indiana law." *Trinity Homes LLC*, 2009 WL 3163108 at *7, n. 9.

Additionally, this Court would find the deposition testimony to be equivocal and ambiguous. "But again, it's difficult to give a specific answer." "It's not clear cut." "I would defer to claims...."

8

[DE 114, Ex. C., September 10, 2008, Huntington Deposition, pp. 98-99]. The witness' subsequent statements when sufficiently pressured cannot be taken out of this context. Moreover, counsel for Cincinnati had a continuing objection to the questions, noting that case law in a particular jurisdiction would need to be referenced to interpret the policy. *Id.* at 96.

The Court would further find that Beazer did not pursue discovery with "due diligence" as required by Rule 60(b)(2). Beazer apparently made no effort to conduct discovery at all or to compel discovery during the months while the motion for judgment on the pleadings was pending. "Once the Motion was filed, no further discovery was conducted pending the disposition of the Motion...." [DE 114, p. 12].

The Court would also find that there is no evidence of "misconduct" regarding the interpretation of the policies. Cincinnati appropriately relied in Indiana law for their policy interpretations.

Finally, Beazer's argument regarding the absence of a fungus exclusion in the 1998 policy would not change the prior judgment. The Opinion stated that there was no need to consider any exclusions "because there is no initial coverage due to the lack of 'property damage' and an 'occurrence.'" *Crossmann*, 621 F. Supp.2d at 465, quoting *Amerisure*, 818 N.E.2d at 1005. "[I]f the insuring clause does not extend coverage, one need look no further." *Id.*

In the present case, the policies provide coverage for "'bodily injury' or 'property damage' covered by this policy occurring during the policy period and caused by an 'occurrence.'" *Id.* at 459. For there to be coverage for any bodily injury, it must have been caused by an occurrence. The claims in the present case are that persons suffered bodily injury due to fungus or mold caused by the defective construction and resulting water intrusion. "Faulty workmanship is not an accident and, therefore, not an occurrence." *Amerisure*, 818 N.E.2d at 1004. Mold and fungus are the natural and ordinary consequences of faulty workmanship that allows water penetration and they do not constitute an accident. *Cf Westfield*, 580 F. Supp.2s at 714 ("the natural and ordinary

9

consequences of an act do not constitute an accident"); *Trinity Homes*, 2009 WL 3163108 at *8 ("we thus conclude that the water damage to components of the homes in this case was nothing more nor less than the natural and ordinary consequence of faulty workmanship, and thus was not an 'accident.' It follows that none of this underlying damage was caused by an 'occurrence....'"). Because there was no occurrence, there is no coverage.

### III.     CONCLUSION

The Court indicates its intention not to grant Beazer's motion for relief from final judgment. [DE 113].

This 12th day of January, 2010.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge